IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PATRICK BERNARD SMITH,                §
TDCJ-CID NO.896428,                   §
      Plaintiff,                   §
v.                                    §    CIVIL ACTION NO. H-09-1025
                                   §
BETTY WILLIAMS, M.D., *et al.*,        §
      Defendants.                  §

## MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff Patrick Bernard Smith, proceeding *pro se* and *in forma pauperis*, has filed his Third Amended Complaint pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages on claims of deliberate indifference from defendants at the Ellis Unit of TDCJ-CID.  (Docket Entry No.47).  Defendants Doctor Betty Williams, Nurse Practitioner Brenda Hough, Physician's Assistant Charles Nagel, and Licensed Vocational Nurse Victoria Ray have filed a motion for summary judgment.  (Docket Entry No.54). Plaintiff has filed a response to the motion and exhibits in support of his response.  (Docket Entries No.68, No.70).  He has also filed a motion to add to the Third Amended Complaint several defendants, which the Court previously dismissed.  (Docket Entry No.69).

For the reasons to follow, the Court will deny plaintiff's request to add parties, grant defendants' motion for summary judgment, dismiss plaintiff's claims against defendants David Fransaw and Sgt. Cable, and dismiss this case with prejudice.

## I.  BACKGROUND

Plaintiff alleges that the following events gave rise to this complaint and his claims against defendants Williams, Hough, Nagel, Ray, Fransaw, and Cable:

On May 25, 2007, plaintiff injured his knee on an uneven surface at the Ellis Unit.  (Docket Entry No.47, page 11).  He was taken to the infirmary but received no treatment for the injury; he was not seen by medical personnel for seven days.  (Id.).

On May 31, 2007, LVN Victoria Ray and NP Brenda Hough examined plaintiff's knee.  Ray was skeptical of plaintiff's claim that his knee cap had popped out and then back in place.  (Id., page 12). Both providers were agitated that plaintiff could not bend his knee and they could not force him to bend it.  (Id.).  They recorded in medical notes that plaintiff was exaggerating the injury and malingering, presumably to get out of work.  (Id.).

On June 18, 2007, PA Charles Nagel determined after examination that nothing was wrong with plaintiff's knee and that plaintiff was faking the injury and malingering.  (Id.).  Nagel noted that plaintiff's knee was normal and that plaintiff was ambulating with no noticeable limp and even though plaintiff's knee and lower leg were swollen.  (Id.).

On July 17, 2007, plaintiff's knee again popped out of socket and back in.  (Id., page 13).  LVN Nikki Anderson called Dr. Betty Williams to examine plaintiff's knee.  (Id.).  Williams ordered an x-ray and crutches.  (Id.).  Anderson told plaintiff that Williams

felt too much movement in plaintiff's knee.  (Id.).

Plaintiff filed several more sick calls and was seen by PA Charles Nagel, who reviewed the medical notes stating that plaintiff was faking the injury and malingering.  (Id.).  Although plaintiff's knee area and leg were swollen and discolored, Nagel determined that "no further care or x-ray is need[ed]."  (Id.). During an examination on August 15, 2007, Nagel disregarded notes written by LVN Anderson and Dr. Williams and refused to give plaintiff pain medication or treatment, and refused to assign him to a one-row level floor cell.  (Id., page 16).  Nagel, however, continued the crutches pass for fifteen days.  (Id.).

On August 30, 2007, Nagel asked Sgt. Cook to retrieve the crutches from plaintiff.  (Id.).  Plaintiff screamed in pain and an officer called medical personnel to the scene.  (Id.).  LVN Ray looked at plaintiff on the floor and told the officer that plaintiff had been seen by Ray and Nagel several times for his knee and that there was nothing medically wrong with plaintiff, that he could walk, and that he was faking the injury.  (Id.).  Plaintiff crawled into his cell without assistance.  (Id.).  Because he could not walk to the dinner hall without assistance, he missed daily meals.  LVN Ray ordered officers not to help plaintiff to walk or to bring meals to his cell.  (Id.).  Security officers, however, found a way to bring food to plaintiff in his cell, assist him to the shower, and assist him to the infirmary.  (Id.).  On September 11, 2007, Dr. Williams noted that plaintiff's medical chart had

3

multiple negative examinations, which led her to believe that plaintiff was fabricating his injuries. (Id.). Dr. Williams referred plaintiff to the brace and limb clinic for a pair of medical boots and a knee brace. (Id., page 17).

On October 1, 2007, PA John Wang determined that plaintiff's knee required surgery and referred him to a specialist at UTMB. (Id., page 16). Wang ordered more x-rays, which showed some bony changes to the tibial plateau. (Id.). On October 26, 2007, LVN Sandra Dickey examined plaintiff's knee for an actual injury and noted that plaintiff was limping and that he had expressed pain at the site and at extension. (Id.). Another x-ray showed soft tissue swelling. (Id.).

On November 28, 2007, plaintiff, who was now on crutches, was placed in pre-hearing detention in administrative segregation. (Id.). Sgt. Cable forced plaintiff to hop on one leg down the stairs to get to his assigned cell. (Id.). On January 1, 2008, Sgt. Fransaw forced plaintiff to do the same to get to his assigned cell in administrative segregation. (Id.).

On January 9, 2008, plaintiff's crutches pass was extended and he was given a shower pass to accommodate his medical needs. (Id., page 17). Security officers disregarded the shower pass; consequently, plaintiff fell in the shower. (Id.). Sgt. Fransaw told plaintiff that the Ellis Unit did not have medical showers. (Id.).

On January 18, 2008, plaintiff fell in the shower while on

crutches because security personnel would not allow him to use the medical/handicap showers.  (Id.).  He fell again under the same conditions on July 23, 2008.  (Id.).

On March 12, 2008, PA Wang documented that plaintiff's left knee injury was attributable to the incident on May 25, 2007, and that plaintiff was unable to walk on the leg.  (Id.).  He also noted limited range of motion due to swelling.  (Id.).

On April 19, 2008, LVN Dennis Walker documented that plaintiff was walking on crutches and that he had an injury to his left knee/leg.  (Id.).  Walker renewed the shower pass.  (Id.).

On May 27, 2008, plaintiff was seen by Dr. Michael J. Hanley via Tele-med.  Handley, an orthopedic specialist, prescribed plaintiff one day of physical therapy and referred plaintiff to the brace and limb clinic.  (Id.). .

On October 18, 2008, plaintiff was transferred to the Hughes Unit.  (Id., page 18).  On October 24, 2008, he was sent to the University of Texas Medical Branch in Galveston ("UTMB")for a MRI, which was taken on November 4, 2008.  (Id.).  On January 9, 2009, the specialist informed plaintiff that he had a chronic ACL tear, a non-displaced fracture, and degenerative changes.  (Id.).  On February 27, 2009, plaintiff was transferred to UTMB, where Dr. Stanley Allen ordered him to be placed in prison hospital pending surgery.  (Id., page 19).

In the present complaint, plaintiff claims that defendants Williams, Hough, Nagel, and Ray falsified his medical records by

recording that plaintiff was malingering, faking, or exaggerating his injuries, thereby mis-diagnosing his knee condition and causing others to do so.  He claims that they deprived him of adequate medical care through their deliberate indifference to his complaints.  (Docket Entries No.47, pages 11-18; No.47-1, pages 7-8).

Plaintiff also complains that Sgt. David Fransaw created and/or enforced an unconstitutional policy that denied plaintiff access to a medical-handicap shower on the Ellis Unit in contravention of the physician's order, thereby forcing him to use general population showers, where he often fell.  (Docket Entry No.47-1, page 8).  He complains that Sgt. Fransaw and Sgt. Cable forced him to hop down the stairs on one leg and to stand on one leg while being searched in pre-hearing detention even though plaintiff had been issued crutches.  (Id.).  Plaintiff claims such acts were discriminatory and punishment for a serious medical condition.  (Id.).

Plaintiff also generally claims that defendants used excessive and retaliatory force against him, deprived him of due process, discriminated against him, and violated the Americans with Disabilities Act with respect to his medical needs via their policies and actions.  (Docket Entry No.47-1, pages 17-18).  He seeks compensatory and punitive damages from defendants in their official and individual capacities.  He also seeks declaratory and injunctive relief.  (Id., pages 18-19).

Defendants Williams, Hough, Ray, and Nagel move for summary judgment on the following grounds:

1.  They were not deliberately indifferent to plaintiff's medical needs;

2.  Plaintiff fails to show causation for his civil rights claims;

3.  They did not engage in retaliatory acts;

4.  They are not proper ADA defendants and plaintiff has not shown that they violated the ADA; and,

5.  They are entitled to qualified immunity.

(Docket Entry No.54, pages 18-19).   Defendants Fransaw and Cable have not been served with process.

## II. DISCUSSION

### A. Medical Providers

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c).   The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.   Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992).   Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a

genuine issue of material fact." Hamilton v. Seque Software, Inc.,
232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18
F.3d 1285, 1295 (5th Cir. 1994)).

### 1. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment's prohibition against cruel and unusual
punishment forbids deliberate indifference to the serious medical
needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976).
The plaintiff must prove objectively that he was exposed to a
substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825,
834 (1994). The plaintiff must also show that prison officials
acted or failed to act with deliberate indifference to that risk.
Id. at 834. The deliberate indifference standard is a subjective
inquiry; the plaintiff must establish that the prison officials
were actually aware of the risk, yet consciously disregarded it.
Id. at 837, 839; Lawson v. Dallas County, 286 F.3d 257, 262 (5th
Cir. 2002). "[F]acts underlying a claim of 'deliberate
indifference' must clearly evince the medical need in question and
the alleged official dereliction." Johnson v. Treen, 759 F.2d
1236, 1238 (5th Cir. 1985). Assertions of inadvertent failure to
provide medical care or negligent diagnosis are insufficient to
state a claim. Wilson v. Seiter, 501 U.S. 294, 297 (1991).

Although plaintiff claims his medical records are falsified,
the record reflects no evidence of falsification and plaintiff
proffers nothing to support this claim. The record shows that

plaintiff had a history of knee pain before the May 25, 2007, injury on the recreation yard and that he was regularly seen and treated by medical providers for the same.[1]  Plaintiff had been instructed to limit his physical activity and sports because of his knee pain. (Docket Entries No.54-6, pages 5, 11, No.70-1, page 2). Plaintiff disregarded such instruction and twice injured his knee while playing basketball. (Docket Entries No.49-1, page 4; No.54-6, page 2; No.54-5, page 25).

Early examinations of plaintiff's knee after the May 25th incident did not clearly reflect a tear or significant knee injury; his conduct, however, suggested that he was exaggerating his symptoms.[2]  (Docket Entry No.54-6, pages 1-3).  After plaintiff's

---

1 Plaintiff submitted a sick call request in November 2006, in which he complained of constant pain in his knee when he lifted his leg to put on his clothes and when he walked up and down stairs. (Docket Entry No.70-1, page 2). Plaintiff was informed that "Dr. Williams reviewed your chart recently and determined that you have had appropriate evaluation & treatment." (Id.).

On April 19, 2007, NP Hough examined plaintiff for knee pain and observed no laxity of muscles, no swelling, and a normal gait. (Docket Entry No.54-6, page 11).

On June 4, 2007, shortly after the May 2007 incident, Dr. Williams requested PA Nagel to review plaintiff's health summary sheet regarding a certain restriction. (Docket Entry No.49-1, page 4).  She observed in the memorandum that plaintiff "has been seen almost weekly for sports injuries." (Id.).

2 On May 31, 2007, NP Hough observed that plaintiff walked with an exaggerated limp, and that he tensed his muscles when she tried to examine the knee and refused to bend by holding his leg out with muscle extension. ((Docket Entry No.54-6, page 1).  Hough noted that plaintiff was able to bend the knee when pushed but tightened the muscle to prevent bending. (Id.).  Hough diagnosed plaintiff with mild tendonitis, and prescribed pain medication and knee exercises. (Id.).  Hough also noted that plaintiff reported that he was going back into the general population at the end of the week and that he would have to go to work. (Id.).

PA Nagel's examination of the knee on June 18, 2007, showed no symptoms of a knee injury but some resistance to passive range of motion. (Docket Entry No.54-4, page 10).  Nagel observed that plaintiff had been seen twice with no significant findings noted on the examination and that plaintiff was not limping. (Id.). On July 10, 2007, Nagel reviewed plaintiff's chart for evaluation of the x-ray

second basketball injury on July 17, 2007, his symptoms were more defined; consequently, x-rays and additional treatment were prescribed.[3]   (Docket Entry No.54-5, page 25).   Still medical personnel were unable to determine the exact cause of the pain and swelling.   Plaintiff's symptoms often differed from examination to examination.   Reports of plaintiff's activities by security guards and his comments and conduct during medical examinations colored the assessment of his condition by medical personnel.[4]   Contrary to plaintiff's assertion, LVN Ray first recorded a malingering assessment on September 3, 2007, after plaintiff's crutch pass

---

film and found that no x-ray had been taken of the knee because prior examinations showed no significant findings. (Id., page 9).   He referred the chart to Dr. Williams for review.   (Id.).

3 Dr. Betty Williams examined the knee and prescribed pain medication, an ACE wrap, an ice pack, and crutches for one week. (Docket Entry No.54-5, page 26). She scheduled a follow-up examination for July 20, 2007.   (Id.).   On July 20, 2007, NP Hough noted plaintiff's complaint of mild pain and the condition of his knee and his gait. (Id., pages 21-23).   Pain medication was continued and plaintiff was instructed to elevate the leg and to limit physical activity or sports.   (Id., page 23).   NP Hough ordered an x-ray of plaintiff's knee "due to injury playing basketball resulting in swelling and pain."   (Id.).

4 On July 31, 2007, after a chart review, PA Nagel concluded that plaintiff's knee injury required no further care and no x-ray. (Docket Entry No.54-4, page 8).   Nagel noted that plaintiff "has sustained several injuries playing basketball in the recent past. This would indicate that he is fully capable of performing regular activities and is therefore capable of working."   (Id.).

On August 15, 2007, Nagel examined plaintiff's knee at the request of LVN Anderson.   (Docket Entry No.54-4, page 7).   Nagel's examination showed that plaintiff would not extend or flex his knee as requested.   (Id.).   Although plaintiff complained of tenderness, Nagel found no tenderness to touch when plaintiff was distracted.   (Id.).   When asked to stand without crutches, plaintiff indicated that he could not put pressure on his left leg and could not stand on his right because it made his left knee hurt.   (Id.).   When questioned why he was standing on his right leg without crutches when he came to the clinic, plaintiff did not respond to the question.   (Id.).   Nagel extended the crutches pass for seven days.   (Id.).   He noted a left knee injury with minimal findings. (Id.).

expired and he refused to leave his cell.[5]   Such assessment,
however, did not impede further examination by Dr. Williams a
couple of weeks later.[6]   In October, PA Wang twice examined
plaintiff weeks apart after plaintiff complained of knee pain but,
like other medical providers, Wang's assessment of plaintiff's knee
condition was inconclusive.[7]   Thereafter, plaintiff fell in the
shower, in his cell, and on the stairs; he was seen and treated by
medical personnel after each incident.[8]

------------------------------------------------------------

5 On September 3, 2007, plaintiff hobbled with assistance to the clinic
complaining that he could not shower and had not eaten since August 30, 2007,
because his crutches had been taken away. (Docket Entries No.54-5, page 20,
No.70-1, page 12). He complained that he was being mistreated and malnourished
by medical personnel. (Id.). Security officers reported that they had been
bringing a food tray to plaintiff in his cell. (Id.). LVN Ray reported that
during her examination, plaintiff tightened his muscles to push against her and
complained that he could not bend the knee and of pain. (Id.). When plaintiff
was distracted by an argument with Ray, she pushed his leg to a ninety degree
angle; when plaintiff noticed the extension, he tightened his muscles and
straightened the leg. (Id.). Ray also noted that his leg appeared swollen when
tightened but not when relaxed. (Id.). She noted that the x-rays had shown no
injury. (Id.). Ray declined plaintiff's request for pain medication and a
wheelchair because he had been seen and evaluated by a medical provider, who had
determined that he did not need the same. (Id.). She advised security not to
serve plaintiff's tray in his cell and that plaintiff should walk to the dining
hall, which was a short distance from his cell. (Id.). Her plan was for
plaintiff to walk to showers and chow and to use his leg. (Id.). Ray's
assessment on September 3, 2007, was that plaintiff was malingering. (Id.).

6 On September 11, 2007, plaintiff complained of continuing knee pain from the
basketball incident in May and requested a knee brace and medical boots. (Docket
Entry No.54-4, pages 6, 25). Dr. Williams noted that plaintiff's chart showed
several negative provider examinations; she observed plaintiff walking without
a limp while cuffed and escorted. Based on her observations, William diagnosed
plaintiff with "[c]hronic knee pain due to multiple sports injuries and overuse."
(Id.). She referred him to the brace and limb clinic for medical boots. (Id.).

7 Wang determined that plaintiff's pain and limping gait might be caused by a
possible ligament injury, a meniscus injury of the left knee, or an ankle sprain.
(Docket Entry No.54-4, pages 4-5). Wang issued crutches, an ACE wrap, and
ordered a slow shower for ninety days. (Id.). He also ordered an x-ray and an
expedited consultation with an orthopedic specialist for the left knee/ankle
injury. (Id., pages 4, 24).

8 On January 9, 2008, plaintiff fell down the stairs. (Docket Entries No.54-5,
page 17, No.70-2, page 20). He complained to NP Hough of moderate and constant
knee pain, with limited range of motion and swelling. (Id.). After consulting
with a provider, Hough ordered plaintiff medically unassigned for ninety days,
issued crutches for ninety days, and assigned him a bottom row for ninety days.

A year after the May 2007, basketball injury, plaintiff was examined by orthopedist Dr. Michael J. Hanley on a complaint of chronic left knee pain from a patella dislocation that relocated spontaneously.   (Docket Entry No.54-4, page 16).   Hanley recommended anti-inflammatory medication and referred plaintiff to the brace and limb clinic for a patella stabilizing brace and to a physical therapist for instruction in straight leg raises, which plaintiff was to perform several hundred daily.   (Id.).   On May 29, 2008, Dr. Williams executed Dr. Hanley's recommendations.   (Docket Entry No.54-3, page 26).   Thereafter, defendants continued to be responsive to plaintiff's complaints and continued to provide care for his injuries until his transfer to another unit in October 2008.[9]

---

(Id., page 19).

On January 11, 2008, plaintiff fell in the shower; NP Hough and LVN Anderson examined plaintiff but he did not complain of any injuries.  (Docket Entry No.70-3, page 25).  NP Hough consulted with a medical provider and determined that no treatment was necessary.  (Id.).

On January 15, 2008, PA Wang examined plaintiff's left knee and noted mild effusion, pain on weight bearing, and no fractures on x-rays.  (Docket Entry No.54-4, page 3).  He renewed the crutches and shower pass for ninety days and noted an orthopedic appointment in March.  (Id.).

On January 24, 2008, plaintiff told medical personnel that he caught his leg on his cell door and fell in his cell; he did not complain of any injuries.  (Docket Entry No.70-3, page 9).  An officer who met medical personnel at plaintiff's cell, indicated that plaintiff did not fall, but sat down on his own.  (Id.).  Plaintiff informed personnel that he had a torn ligament and that he was to have surgery in March.  (Id.).  No medical intervention was required.  (Id.).

On March 12, 2008, Wang examined plaintiff's knee and reissued the ACE wrap.  (Id., page 1).  Wang noted that plaintiff missed his orthopedic appointment because of a unit lock down and requested another appointment.  (Id.).

9 On June 17, 2008, Dr. Williams examined plaintiff and noted that plaintiff had general swelling of the foot and ankle, which she attributed to vascular etiology instead of joint or patella problems.  (Docket Entry No.54-3, page 24).  She indicated that the swelling had been observed for months.  (Id.).  She issued an ACE bandage and advised plaintiff to keep his upcoming brace and limb

Although plaintiff has expressed dissatisfaction with the assessment of his injury, and the type, extent, and effectiveness of the treatment prescribed by medical providers Williams, Nagel, Hough, and Ray, the record negates any inference that they were deliberately indifferent to his serious medical needs. *See e.g.,* Norton v. Dimazana, 122 F.3d 286, 291-92 (5th Cir. 1997); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show Eighth Amendment violation). Even though such providers may have believed on occasion that plaintiff exaggerated his knee condition and that he was malingering, the record shows that such belief was based on plaintiff's conduct, statements, and their observations of his condition. The record also shows that in spite of such belief, defendants did not refuse to examine or treat plaintiff. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (finding active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered).

---

appointment. (Id.). In June 2008, plaintiff was seen by physical therapists in the Brace and Limb Clinic, who ordered a stabilizing brace and orthotic management and training. (Docket Entry No.54-6, pages 17, 18 20). After another fall in the shower in late July 2008, plaintiff was examined by medical personnel over the course of several days for his knee injury and other issues. (Docket Entries No.54-3, page 23, No.54-4, pages 20-22; No.54-5, pages 13-16). On August 15, 2008, PA Wang examined plaintiff's knee and noted that self-exercise had not been effective; he referred plaintiff to an orthopedic specialist. (Docket Entry No.54-3, page 21).

> [T]he decision whether to provide additional treatment is
> a classic example of a matter for medical judgment.  A
> showing of deliberate indifference requires the prisoner
> to submit evidence that prison officials refused to treat
> him, ignored his complaints, intentionally treated him
> incorrectly, or engaged in any similar conduct that would
> clearly evince a wanton disregard for any serious medical
> needs.  Deliberate indifference is an extremely high
> standard to meet.

Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (footnotes,

citations and internal quotations omitted).  No such showing has

been made on the current record.  Accordingly, defendants are

entitled to summary judgment as a matter of law on plaintiff's

claims of falsified records and deliberate indifference.

### 2. Americans with Disabilities Act

Title II of the American with Disabilities Act ("ADA")

provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be

denied the benefits of the services, program, or activities of a

public entity or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  To establish a claim under the ADA, the

plaintiff must show (1) that he is a qualified individual under the

Act; (2) that he is being excluded from participation in or being

denied benefits of services, programs, or activities for which the

defendants are responsible, or that he is otherwise being

discriminated against by the defendants; and (3) that this

exclusion, denial of benefits, or discrimination is by reason of

the disability.  Lightbourn v. County of El Paso, Texas, 118 F.3d

421, 428 (5th Cir. 1997).  Title II of the ADA applies to state prison facilities and state prison services.  *See* Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998).

As a preliminary matter, plaintiff cannot recover from defendants in their individual capacity under the ADA.  *See* Cole v. Velasquez, 67 Fed. Appx. 252 n.11 (5th Cir. 2003) (not designated for publication).  Moreover, to the extent that plaintiff has asserted claims against defendants in their official capacities for violating the ADA, such claims are also subject to dismissal. Plaintiff states no facts to show that the injury to his knee renders him disabled for purposes of the ADA or that defendants' acts or omissions amount to discrimination under the ADA. Accordingly, defendants are entitled to summary judgment on this ground.

### 3. Other Claims

Plaintiff states no facts that would give rise to claims that defendants Williams, Nagel, Hough, or Ray violated his rights to due process or equal protection, or they used excessive and retaliatory force against him.  Plaintiff's allegations are general and conclusory and are therefore, subject to dismissal.  *See* Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992) (plaintiff must state facts and not conclusory allegations).

## B. Security Staff

Plaintiff's claims against Sgt. Fransaw and Sgt. Cable are governed by the Prison Litigation Reform Act ("PLRA").  Because plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e), and 28 U.S.C. § 1915A(b).   In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it.  <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989); <u>Talib v. Gilley</u>, 138 F.3d 211, 213 (5th Cir. 1998).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist."  <u>Harris v. Hegmann</u>, 198 F.3d 153, 156 (5th Cir. 1999).  A complaint may be dismissed for failure to state a claim if the

plaintiff does not allege enough facts to state a claim to relief that is "plausible" on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, - U.S. -, -, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id..

A plaintiff seeking relief under 42 U.S.C. § 1983 must establish two essential elements: that the conduct complained of was committed under color of state law, and that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. Hernandez v. Maxwell, 905 F.2d 94, 95 (5th Cir. 1990). Plaintiff's pleadings fail to show that either Fransaw or Cable violated plaintiff's constitutional rights.

Plaintiff claims that on January 1, 2008, Sgt. Fransaw forced him to hop down the stairs to a cell in administrative segregation pending a pre-detention hearing. (Docket Entry No.47-1, pages 8, 16-17). Plaintiff was given a disciplinary case on January 1, 2008, which involved Sgt. Fransaw. (Docket Entry No.70-5, page 15). Plaintiff did not complain in Step 1 Grievance Number 2008072481 that Fransaw forced him to hop down the stairs or that he was injured as a result of such incident. (Id.). Clinic notes of his pre-hearing detention medical examination on the same day

showed no apparent injury. (Docket Entry No.70-3, page 13).
Plaintiff states no facts in his pleadings to show how he hopped
down the stairs and no facts that would give rise to a claim that
Fransaw acted with deliberate indifference to plaintiff's safety by
forcing him to do so.[10]

Plaintiff also claims that Sgt. Fransaw enforced or created an
unconstitutional and blanket policy to prohibit medical and
handicapped showers, thereby, violating a physician's orders to
accommodate plaintiff's knee injury, which caused plaintiff to fall
in the shower and suffer additional injuries. (Docket Entry No.47-
1, page 8). Plaintiff's pleadings and exhibits show that the Ellis
Unit does not have designated medical or handicapped showers;
consequently, security staff initially did not honor the shower
pass issued by medical providers.[11] Security personnel and medical
providers, however, agreed to allow plaintiff to take a slower

---

[10] Plaintiff states no facts as to whether he hopped without crutches, guard
support or escort, or handrail; nor does he state any facts regarding the number
of steps or stairwells he hopped or the condition of the steps or stairwells.

[11] Plaintiff alleged in Step 1 Grievance Number 2008073355, filed on January 8,
2008, that Sgt. Fransaw refused him a medical shower on December 31, 2007, and
on January 1, 2008. (Docket Entry No.70-5, page 7). Plaintiff claimed that
Fransaw and other correctional staff informed plaintiff that the first shift does
not provide medical showers. (Id., page 7). Fransaw told plaintiff that medical
showers were done on second shift. (Id.). In Step 1 Grievance Number
2008072481, plaintiff alleged that Officer Rogers informed plaintiff that the
second shift does not provide medical showers and suggested that plaintiff take
a shower with trustees at 5:00 p.m. (Docket Entry No.70-5, page 15).

Clinic notes signed by NP Hough on January 11, 2008, reflect that plaintiff fell
in the shower but reported no injuries. (Docket Entry No.70-3, page 25).
Plaintiff expressed concern about a medical shower and security not honoring his
pass. (Id.). Lt. Landis informed Hough that the medical shower is at 5:00 p.m.
and she instructed plaintiff to shower at that time. (Id.). Clinic notes signed
by PA Wang on January 23, 2008, reflect that the Ellis Unit does not have a slow
shower pass. (Docket Entry No.70-3, page 12).

shower in an area with other similarly situated inmates.[12]

Until the staff came to such an agreement, plaintiff attempted
to shower at the time he thought appropriate and when refused the
opportunity, plaintiff created a disturbance that resulted in
disciplinary action.   In Step 1 Grievance Number 2008072481,
plaintiff alleged that on January 1, 2008, a wing officer refused
him a medical shower during the 5:00 p.m. shift.   (Docket Entry
No.70-5, page 15).  Sgt. Fransaw, the supervising officer, and two
other officers were called to assist.  (Id.).  Fransaw refused to
allow plaintiff to shower; thereafter, plaintiff announced that he
was going to the dayroom, which was locked, and that Fransaw should
stop lying.  (Id.).  Fransaw questioned plaintiff; plaintiff turned
to face Fransaw and again called Fransaw a liar.  (Id.).  Fransaw
pushed plaintiff to the wall, cuffed him, and took plaintiff's
crutches; plaintiff fell to the floor.  (Id.).

Plaintiff was brought to the clinic for a pre-hearing
detention physical; he was uncooperative but appeared in no
apparent distress.  (Docket Entry No.70-3, page 13).  Plaintiff was
given a disciplinary case for creating a disturbance and refusing
to obey orders.  (Docket Entry No.70-5, page 16).

Plaintiff contends that Fransaw's use of force was retaliatory

---

12 Clinic notes dated January 23, 2008, show that PA Wang explained to Sgt.
Fransaw that plaintiff needed a slower shower because he uses crutches; Fransaw
agreed to allow plaintiff to shower with other similar inmates and to allow him
to use the shower for a longer time without a pass.  (Docket Entry No.70-3, page
12).  Plaintiff was informed in response to Step 1 Grievance Number 2008072481
that "there were places in the shower for offenders in crutches."  (Docket Entry
No.70-5, page 16).

and harassment for filing complaints against security staff. (Docket Entry No.70-3, page 21). Plaintiff, however, states no facts by which the Court could infer a retaliatory intent, no facts to show causation, and no facts to show that Fransaw's alleged retaliatory act was more than *de minimus*. *See* Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (stating to show retaliation "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation"); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (noting that prisoner must "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred"); Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (stating that the retaliatory adverse act must be more than *de minimis* and "capable of deterring a person of ordinary firmness from further exercising his constitutional rights").

Plaintiff further fails to set forth facts giving rise to a claim that Fransaw's use of force constituted the unnecessary and wanton infliction of pain, which is prohibited by the Eighth Amendment. *See* Hudson v. Macmillan, 503 U.S. 1, 5 (1992). Plaintiff's account of the January 1, 2008, incident with Fransaw shows Fransaw's attempt to restore order. *See* id. at 7 (holding the central question that must be resolved an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm"). Even if, as plaintiff complains in
his grievance, Fransaw pushed plaintiff hard to the wall (Docket
Entry No.70-5, page 16), plaintiff fails to show that Fransaw's
actions were malicious or wanton. Not "every malevolent touch by
a prison guard gives rise to a federal cause of action." Hudson,
503 U.S. at 9.

Plaintiff also complains that on November 28, 2007, Sgt. Cable
forced him to hop down the stairs on one leg and to stand on one
leg while being searched in pre-hearing detention even though
plaintiff had been issued crutches. (Docket Entry No.47-1, pages
8, 16-17). Plaintiff's Step 1 Grievance Number 200805518 reflects
that on November 28, 2007, plaintiff was attempting to limp up the
stairs and was ordered into the day room. Sgt. Cable was called
after plaintiff refused the order. (Docket Entry No.70, page 20).
Plaintiff informed Cable that he was not going to obey the order
and Cable took plaintiff to the pre-hearing detention holding cell.
(Id.). Plaintiff was given a disciplinary case for creating a
disturbance. (Id., page 21). Plaintiff voiced no complaint about
being forced to hop to the cell in administrative segregation. He
states no facts in any of his pleadings to show that Cable forced
him to hop in a dangerous manner. In fact, plaintiff states no
facts in any pleading that would give rise to an excessive force,
retaliation, or deliberate indifference claim against Sgt. Cable.

Finally, plaintiff contends that Cable and Fransaw
discriminated against him because of his serious medical condition

by forcing him to hop down the stairs.   (Docket Entry 47-1, page
8).   The facts alleged in plaintiff's pleadings and in his
grievances do not show that defendants Fransaw and Cable acted with
a discriminatory animus toward plaintiff or that they treated him
differently than any other similarly situated inmate at any time.
McCleskey v. Kemp, 481 U.S. 279, 292, 298 (1987)(indicating that
plaintiff must prove purposeful discrimination resulting in a
discriminatory effect among persons similarly situated); Woods v.
Edwards, 51 F.3d 577, 580 (5th Cir. 1995) (stating that a plaintiff
must prove specific acts supporting a claim of discrimination, as
opposed to his personal belief that discrimination played a part in
the situation).   Accordingly, plaintiff's claims against Fransaw
and Cable are subject to dismissal as legally frivolous.

## C. Additional Parties

Plaintiff's "Motion to Place University of Texas Medical
Branch/Correctional Managed Care Division, Shanta Crawford, Dr.
Lanette Linticum [sic] and Alfred Janicek Back as Defendants as
well as TDCJ-CID" (Docket Entry No.69) is DENIED.  Plaintiff states
no facts that would give rise to claims against these defendants in
the present motion and has not attached an amended or supplemental
complaint.   (Docket Entry No.69).

## III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.  Defendants' motion for summary judgment (Docket Entry No.47) is GRANTED.  All claims against defendants Dr. Betty Williams, NP Brenda Hough, LVN Victoria Ray, and PA Charles Nagel are DISMISSED WITH PREJUDICE.

2.  Plaintiff's claims against defendants David Fransaw and Sgt. Cable are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B).

3.  The present complaint is DISMISSED WITH PREJUDICE.

4.  All other pending motions are DENIED.

The Clerk will provide a copy of this order by facsimile transmission, regular mail, or e-mail to the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159; the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas  75702, Attention: Manager of the Three-strikes List.

Signed at Houston, Texas, on December 27, 2010.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE